IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | C/A No. 7:17-cv-02810-CMC |
| Petitioner, | |
| v. | Opinion and Order
Staying Petition to Enforce Summons |
| BIBLE STUDY TIME, INC., | |
| Respondent. | |

This matter is before the court on Petition of the United States of America ("Government")

to enforce a summons ("the Summons") issued by the Internal Revenue Service ("IRS") to Bible

Study Time, Inc. ("BST"). BST opposes enforcement on multiple grounds including the

underlying church tax inquiry ("Inquiry") and, by extension, church tax examination

("Examination"), were not properly initiated under 26 U.S.C. § 7611 ("Section 7611").[1]

**Summary of Argument.** BST's argument focuses on whether the IRS satisfied Section

7611's requirement that an "appropriate high-level Treasury official reasonably believes (on the

basis of facts and circumstances recorded in writing)" that one of several prerequisites exists before

initiating an Inquiry ("Section 7611 Determination"). 26 U.S.C. § 7611(a)(2). BST contends this

requirement was not satisfied because the official who signed the Inquiry Notice, the Director,

Exempt Organizations ("DEO"), holds too low a rank to qualify as an "appropriate high-level

Treasury official." *See* 26 U.S.C. § 7611(h)(7) (defining "appropriate high-level Treasury official"

_____

[1] A properly initiated Inquiry is one prerequisite to an Examination. *See* 26 U.S.C. §
7611(b)(3)(A)(i) & (b)(3)(B) (requiring copy of notice of Inquiry ("Inquiry Notice") be included
in notice of Examination ("Examination Notice") and setting a minimum time between Inquiry
Notice and Examination Notice).

as "the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region."). BST also argues the Government may not rely on any participation in the Section 7611 Determination by the Commissioner, Tax Exempt and Government Entities Division ("TE/GE Commissioner") to cure this deficiency for two reasons: (1) the IRS did not disclose the TE/GE Commissioner's participation prior to filing the Petition; and (2) the TE/GE Commissioner holds too low a rank to qualify as an appropriate high-level Treasury official. Addressing a related issue raised by the court, BST argues authority to make the Section 7611 Determination was never properly delegated to either official even if one or both hold sufficient rank to satisfy Section 7611(h)(7). The Government, in contrast, argues authority to make the Section 7611 Determination was delegated to both the DEO and TE/GE Commissioner, both hold sufficient rank, and both made the Determination.

**Summary of Ruling.** Having fully considered the parties' arguments on these issues, the court holds as follows:

(1) authority to make the Section 7611 Determination was delegated to the TE/GE Commissioner by Delegation Order 193 (Nov. 8, 2000) and such delegation was permitted by Section 7611(h)(7) (*infra* Discussion § II);

(2) any purported redelegation of authority to make the Section 7611 Determination to the DEO was neither allowed by Delegation Order 193 nor effective because the DEO holds too low a rank to qualify as an "appropriate high-level Treasury official" (*infra* Discussion § III); and

(3) there has not been substantial compliance with the notice requirements of subsections (a) or (b) of Section 7611, requiring this matter be stayed pursuant to Section 7611(e) until all practicable steps to correct the noncompliance have been taken (*infra* Discussion § IV).

2

<h1 style="text-align:center">BACKGROUND</h1>

**I.     Government Petition and Attachments**

**A.     Petition**

The Petition was filed September 8, 2017.  ECF No. 1.  It seeks to enforce the Summons

served on BST on June 29, 2017, in furtherance of the IRS's "examination of the tax-exempt status

and income tax liability of BST for the tax year ended December 31, 2013."  ECF No. 1 ¶¶ 3, 5,

14.  The Petition alleges "[a]ll administrative steps required by the Internal Revenue Code for the

issuance of a summons have been taken, including the procedures required to initiate a church tax

inquiry and examination with respect to any organization claiming to be a church under 26 U.S.C.

§ 7611[.]"  *Id.* ¶ 21.

The Petition describes the steps required and taken as follows:

> 27.     26 U.S.C. § 7611(a)(1) provides that the Secretary [of the Treasury] may
> begin a church tax inquiry only if the reasonable belief requirement of paragraph
> (2) and notice requirements of paragraph (3) have been met.  26 U.S.C. § 7611(a)(2)
> provides that an appropriate high-level Treasury official must reasonably believe
> that the church may not be exempt under 26 U.S.C. § 501(a) or may be carrying on
> an unrelated trade or business or otherwise engaged in activities subject to tax under
> the Internal Revenue Code.
>
> 28.     On May 25, 2016, the [DEO], Tamera Ripperda, and [TE/GE
> Commissioner], Sunita B. Lough, signed the IRC Section 7611 Church Case Time
> Limits and Approval[s] Cover Sheet for approval of the issuance of Notice of
> Church Tax Inquiry to BST. . . .
>
> 29.  The approval of the notice of church tax inquiry of BST by [the DEO], acting
> with the concurrence of the TE/GE Commissioner, satisfies the reasonable-belief
> requirement of 26 U.S.C. §§ 7611(a)(1)(A) and 7611(a)(2)[.]

ECF No. 1 ¶¶ 27-29.

The Petition alleges the required Inquiry Notice was sent to BST on June 15, 2016, and

Examination Notice was sent to BST on September 1, 2016.  *Id.* ¶¶ 30-32.  Both were signed by

the DEO. *Id.* It alleges BST did not request a pre-examination conference despite being offered that opportunity. *Id.* ¶ 33; *but see* ECF Nos. 10, 19 (BST memoranda challenging Government's characterization of events including whether BST requested conference).

The Summons addressed by the Petition was served roughly nine months later, on June 30, 2017. ECF No.1. ¶¶ 14, 15.[2] BST did not appear in response to the Summons, leading to the present Petition. *Id.* ¶ 16.

### B.    Gagnon Declaration

The Petition is supported by the Declaration of Revenue Agent Russell Gagnon ("Agent Gagnon"). ECF No. 1-1 ("Gagnon Declaration"). Agent Gagnon describes his involvement, dating back to January 2015, in investigating BST's 2013 Form 990 (Return of Organization Exempt from Income Tax). *Id.* ¶ 2. He avers BST did not claim church status on its 2013 Form 990, though it did claim to be a tax exempt entity under Internal Revenue Code § 509(a)(2). *Id.* ¶¶ 5, 6.

Agent Gagnon describes a variety of concerns raised by BST's 2013 Form 990, which led to the initial investigation. *Id.* ¶¶ 6-9. He avers he contacted BST in February 2015, seeking to conduct a field examination in April 2015. *Id.* ¶ 17. In March 2015, BST responded by claiming church status. *Id.* ¶ 19.

The IRS "initiated procedures to determine whether to authorize a church tax inquiry" on April 14, 2015. *Id.* ¶ 20. A little over a year later, "[o]n May 25, 2016, the [DEO] signed the 'IRC

---

[2] Between October 2016 and June 2017, the IRS sought and obtained documents from third parties. *See generally Bible Study Time, Inc. v. United States*, 240 F. Supp. 3d 409 (D.S.C. 2017) (denying BST petition to quash third-party summonses issued to various banks).

Section 7611 Church Case Time Limits and Approval[s] Cover Sheet'" ("Approvals Cover Sheet"). *Id.* ¶ 21. The TE/GE Commissioner signed the same form on the same day. *Id.* ¶ 22.[3] A few weeks later, on June 15, 2016, the DEO signed an Inquiry Notice listing the grounds for the Inquiry, which was sent to BST by certified mail. *Id.* ¶¶ 23, 24. BST advised the IRS it would not respond to the Inquiry Notice, prompting the IRS to send an Examination Notice on September 1, 2016. *Id.* ¶¶ 25, 26. This notice was also signed only by the DEO. *Id.*

## II.     BST Opposition

### A.     Pre-Petition Correspondence

Through its opposition memorandum, BST fills in details of its communications with the IRS and argues the underlying examination was neither properly authorized nor the TE/GE Commissioner's participation in the Section 7611 Determination disclosed. ECF No. 10 (response); *see also* ECF No. 19 (sur-reply). BST attaches multiple letters supporting its characterization of events. ECF No. 10-8 through 10-13 (discussed below).

**BST Letters.** BST's first two letters to the IRS were sent after the Inquiry Notice issued on June 15, 2016, and before the Examination Notice issued on September 1, 2016. *See* ECF No. 10-8 (June 29, 2016 letter from BST's certified public accountant ("CPA")); ECF No. 10-10 (August 9, 2016 letter from BST's attorney). Both letters rely on *United States v. Living Word Christian Ctr.*, 2008 WL 5456381 at ** 4-6 (D. Minn. 2008) ("*Living Word, R&R*"), *adopted* 2009 WL 250049 (D. Minn. 2009) ("*Living Word, Order*") (collectively "*Living Word*"), in challenging

---

[3] The Approvals Cover Sheet is attached as Exhibit 4 to the Gagnon Declaration. It reflects signatures (or substitutes for signatures) of the DEO, the TE/GE Commissioner, and five other IRS officials under two separate sections titled "Church Tax Inquiry Notice" and "Church Notice of Examination."

the DEO's authority to make the Section 7611 Determination. ECF Nos. 10-8, 10-10. As explained in these letters, *Living Word* held the Director of Exempt Organizations, Examinations ("DEOE"), an official one step below the DEO, held too low a rank to make the Section 7611 Determination. *Living Word, R&R* at ** 12, 13; *Living Word, Opinion* at *4.[4]

BST's third letter is dated March 27, 2017, well after the Examination Notice issued on September 1, 2016, but before the Summons was served on June 30, 2017. ECF No. 10-13 at 5 (letter from BST attorney). As in BST's earlier letters, this letter argues the Examination was not properly authorized because the official who made the underlying Section 7611 Determination held too low a rank, though it does not identify the DEO as the official who took this action or cite *Living Word*. *Id.* The letter states BST is willing to participate in a conference without waiving its objection to the legitimacy of the Examination. *Id.* BST's attorney made essentially the same points in two subsequent letters dated after the Summons was served. *See* ECF No. 10-13 at 15, 20 (letters dated July 10, 2017, and July 19, 2017).

**IRS Letters.** BST submits four letters from the IRS. One expressly addresses the DEO's authority, distinguishing *Living Word* as addressing an official of lower rank and arguing the DEO holds sufficiently high rank to make the Section 7611 Determination and sign the Inquiry Notice. ECF No. 10-9 (August 4, 2016 letter signed by an Exempt Organizations Area Manager). BST

------------------------

[4] *See* ECF No. 10-8 (CPA's letter relying on *Living Word* to challenge DEO's authority to issue an Inquiry Notice based on her low rank); ECF No 10-10 (attorney's letter repeating position DEO lacked authority and addressing *Living Word* in greater detail including by noting *Living Word, R&R*'s characterization of TE/GE Commissioner as nearest equivalent to a Regional Commissioner, the class of official to whom authority was delegated before IRS reorganization eliminated the position).

also attaches the subsequent Examination Notice (signed by the DEO) and two letters, none of which address the issue of the DEO's authority.[5]

**B.     BST's Arguments**

As in the pre-Petition letters summarized above, BST argues the DEO lacks authority to make the Section 7611 Determination or sign the Inquiry Notice and Examination Notice because she holds too low a rank.  BST asserts the IRS should not be allowed to rely on any participation by the TE/GE Commissioner because her participation in the Determination was not disclosed at any point before the Government filed its Petition.  ECF No. 10 at 15 (characterizing Petition's assertion both the DEO and TE/GE Commissioner "signed" the Approvals Cover Sheet as a "carefully worded allegation" and noting "the IRS has never disputed [the DEO] is the [official] who purported to authorize the inquiry").  BST notes the absence of support for any claim either the DEO or TE/GE Commissioner took the steps required to make the Section 7611 Determination. It also argues the TE/GE Commissioner holds too low a rank to satisfy Section 7611(h)(7), even if her participation is considered.

**III.     Government's Reply**

Through its Reply, the Government offers Declarations of both the DEO and TE/GE Commissioner.   These Declarations address these officials' responsibilities, places in the organizational chart, and roles in approving the BST Inquiry.  Using nearly identical language,

_____

[5] ECF No. 10-11 (September 1, 2016 Examination Notice signed by DEO); ECF No. 10-12 (March 16, 2017 letter from Agent Gagnon stating IRS is initiating a field examination and offering a prior conference but not addressing previously raised concern about DEO's authority);  ECF No. 10-14 (July 14, 2017 letter from TE/GE Division area counsel to BST attorney regarding non-compliance with Summons but not addressing BST attorney's challenge to DEO authority).

both declarants aver they reviewed listed materials, made a Section 7611 Determination based on that review, and indicated their Determination by signing the Approvals Cover Sheet.[6]

## IV.  BST's Sur-Reply[7]

BST argues the Government should be estopped from claiming the TE/GE Commissioner made an independent Section 7611 Determination because this claim was first disclosed in the Government's Reply and attached Declaration of the TE/GE Commissioner.  *See* ECF No. 19 at 3, 4.  In contrast, the Petition alleges only that the TE/GE Commissioner "signed" the Approvals Cover Sheet and refers to her "concurrence" with the DEO's Determination as sufficient.  *Id.*

## DISCUSSION

To obtain judicial enforcement of an administrative summons, the Government must make a prima facie showing of four factors:  (1) the investigation is being conducted for a legitimate purpose; (2) the inquiry may be relevant to that purpose; (3) the IRS does not currently possess the information sought; and (4) the administrative steps required by the Internal Revenue Code have been followed.  *United States v. Powell*, 379 U.S. 48, 57-58 (1964) (addressing Petition to enforce summons issued to corporate taxpayer); *see also Living Word, R&R* at **3, 13 (applying *Powell*

---

[6] ECF No. 15-2 ¶¶ 7, 8 (TE/GE Commissioner's Declaration listing materials reviewed and stating "[a]fter reviewing the materials described above, I determined that I reasonably believed that BST may not be exempt by reason of its status as a church, . . . or that it may have been carrying on an unrelated trade or business . . . , or otherwise engaged in activities subject to taxation under the Internal Revenue code."); *id.* ¶ 9 (stating "After I made the reasonable belief determination, I electronically signed the [Approvals Cover Sheet] to evidence my reasonable belief determination and approve the proposed church tax inquiry."); ECF No. 15-1 ¶¶ 6-8 (DEO's Declaration with nearly identical language).

[7] BST was granted leave to file a Sur-Reply because the Government raised new arguments and presented new evidence through its Reply.

in recommending denial of petition to enforce summons issued in support of church tax examination). Though not so limited, BST's opposition to enforcement focuses on the fourth *Powell* factor.[8]

To determine whether the IRS satisfied the fourth *Powell* factor, the court must resolve three subordinate issues: (1) whether authority to make the Section 7611 Determination was delegated (or purported to be delegated) to the DEO, TE/GE Commissioner, or both; (2) if delegated to one or both, whether these officials satisfied the "high-rank" requirement of Section 7611(h)(7); and (3) whether there has been substantial compliance with the notice requirements of Section 7611.

As explained below, resolving these issues is complicated by multiple factors including reorganization of the IRS between 1998 and 2000 to eliminate the regional structure that allowed clear application of Section 7611(h)(7)'s identification of the lowest ranking official to whom authority to make the Section 7611 Determination could be delegated. *Infra* Discussion § I.A.2. It is further complicated by the following: (1) the Secretary of the Treasury's use of broadly-worded Delegation Order 193 to delegate multiple responsibilities from one set of officials to another set of officials (*infra* Discussion § I.A.3); (2) the IRS's inconsistent prior interpretation of Delegation Order 193 as it relates to the official authorized to make the Section 7611 Determination, failed attempts to adopt a regulation vesting authority in the DEO, and recently

---

[8] BST also argues the Petition fails to adequately address *Powell*'s second factor, which requires a showing of necessity (not just relevance) to enforce a summons issued to a church. *See, e.g.*, ECF No. 10 at 27 (citing *United States v. Church of Scientology of Boston, Inc.*, 933 F.2d 1074, 1075 (1st Cir. 1991)). In light of the court's determination as to the fourth factor, it does not reach BST's arguments as to other factors. *See infra* Discussion § III.

adopted Internal Revenue Manual ("IRM") provisions purporting to make a hybrid delegation of authority to the DEO "who acts in concurrence with the TE/GE Commissioner" (*infra Discussion* §§ I.A.4, 5); (3) the Government's failure in this action to advance a position consistent with current IRM language (*infra* Discussion § I.B (discussing Government's litigation arguments); and (4) the IRS's failure to disclose any participation by the TE/GE Commissioner prior to filing the Petition either through the Notices or in response to BST's subsequent communications challenging the DEO's authority (*infra* Discussion §§ I.B, II.B, IV).

## I. Section 7611 Requirements and Delegation

### A. Statutory Requirements and History of Delegation

#### 1. Statutory Requirements

In 1984, Congress enacted the Church Audit Procedures Act ("CAPA"), now codified as 26 U.S.C. § 7611. Section 7611 requires special procedures be followed when the IRS seeks to conduct a church audit. *See generally Living Word, R&R* at **4-6 (addressing CAPA purpose and history).[9]

The following procedures are critical here:

(a) Restrictions on inquiries –

    (1) In general. – The Secretary may begin a church tax inquiry only if –

        (A) the reasonable belief requirements of paragraph (2), and

        (B) the notice requirements of paragraph (3), have been met.

---

[9] CAPA defines "church" to include any entity claiming to be a church. 26 U.S.C. § 7611(h)(1). Thus, the special procedures in CAPA became applicable to BST for Tax Year 2013 when, in March 2015, BST advised the IRS it was claiming church status for that tax year.

(2) Reasonable belief requirements. – The requirements of this paragraph are met with respect to any church tax inquiry if an appropriate high-level Treasury official reasonably believes (on the basis of facts and circumstances recorded in writing) that the church –

    (A) may not be exempt, by reason of its status as a church, from tax under section 501(a), or

    (B) may be carrying on an unrelated trade or business (within the meaning of section 513) or otherwise engaged in activities subject to taxation under this title.

\* \* \*

(h) Definitions. – For purposes of this section –

\* \* \*

(7) Appropriate high-level Treasury official. – The term "appropriate high-level Treasury official" means the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region.

26 U.S.C. § 7611(a), (h).

Remedies for violation of Section 7611 are limited. Most critically, Section 7611(e) provides as follows:

(1) **In general**. – If there has not been substantial compliance with –

(A) the notice requirements of subsection (a) or (b), [or]

(B) the conference requirement described in subsection (b)(3)(A)(iii),

\* \* \*

with respect to any church tax inquiry or examination, any proceeding to compel compliance with any summons with respect to such inquiry or examination shall be stayed until the court finds that all practicable steps to correct the noncompliance have been taken. The period applicable under paragraph (1) or subsection (c) shall not be suspended during the period of any stay under the preceding sentence.

11

(2) **Remedy to be exclusive.** – No suit may be maintained, and no defense may be raised in any proceeding (other than as provided in paragraph (1)), by reason of any noncompliance by the Secretary with the requirements of this section.

26 U.S.C. § 7611(e).

## 2. Initial Regulation and IRS Reform Act

Shortly after passage of CAPA, the IRS issued a regulation addressing these requirements. *See* Treasury Regulation § 301.7701 ("Initial Regulation"). This regulation reads, in part, as follows: "Under section 7611 . . . , the [IRS] may begin a church tax inquiry only when the appropriate Regional Commissioner (or higher Treasury official)" makes the reasonable belief Determination required by Section 7611(a)(2). *Id.* at A-1. It is undisputed the Initial Regulation served as or evidenced delegation of authority to make the Section 7611 Determination to Regional Commissioners and higher-ranking Treasury officials.

While the Initial Regulation allows *either* a Regional Commissioner *or higher* official to make the Section 7611 Determination, it specifies "the appropriate Regional Commissioner is required to provide written notice to the church of the beginning of [an Inquiry]." *Id.* at A-9. The Initial Regulation also requires a "second notice" to initiate an Examination, but does not specify which official must provide that notice. *Id.* at A-10.

The Initial Regulation has never been rescinded or replaced. It may, nonetheless, not be followed as written because the position of Regional Commissioner was eliminated after adoption of the IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 1001(a), 112 Stat. 685 (1998) ("IRS Reform Act"). *See generally Living Word, R&R* at ** 5, 6 (discussing reorganization of IRS and impact on delegation of authority to make the Section 7611 Determination). As explained in *Living Word*, the IRS Reform Act eliminated a geographically-based, four-region

structure and replaced it with a taxpayer-type, four-division structure.[10] *Id.*; *see also* 112 Stat. at 689 (requiring IRS to change from a "national, regional, and district structure" to "organizational units serving particular groups of taxpayers"); J. Michael Martin, *Why Congress Adopted the Church Audit Procedures Act and What Must be Done Now to Restore the Law for Churches and the IRS,* 29 Akron Tax J. 1, 15-19 (2014) (addressing *Living Word* and impact of IRS reorganization on application of Section 7611).

### 3. Delegation Order 193

In November 2000, the IRS issued Delegation Order 193 to address organizational changes made following adoption of the IRS Reform Act. This broadly-worded order redelegates authority in three sections, each of which delegates responsibilities previously held by one title or set of titles to another set of titles. Two of the three delegation sections (paragraphs (4)-(6) and (7)-(9)) are relevant here:

**[Delegation of authority of the Commissioner of the IRS ("IRS Commissioner") ¶¶ (4)-(6)]**

(4) **Authority:** To perform those *functions the [IRS] Commissioner is authorized to perform* which arise out of, relate to, or concern the respective activities or functions administered by the delegated officials. Each of these officials will *exercise this authority in his or her own capacity* and under his or her own title and is responsible for referring matters to the [IRS] Commissioner for action when appropriate.

(5) **Delegated to:** Assistant Deputy Commissioners, *Division Commissioners*, and Chiefs.

(6) **Redelegation:** The authority in this order *may not be redelegated*.

**[Delegation of authority of various officials including Regional Commissioners ¶¶ (7)-(9)]**

---

[10] As explained below, there were apparently seven regions when CAPA was initially passed, but only four regions when the IRS Reform Act was passed. *See infra* nn. 18, 19.

(7) **Authority:** To take *actions previously delegated to* District Directors, *Regional Commissioners*, Directors of Service Centers, and Assistant Commissioners *by Treasury Regulations*, Treasury Decisions, or Revenue Procedures *for matters under their jurisdiction or cases under their responsibility; and to delegate same* to officers and persons under their supervision, *except where prohibited by law* or where inconsistent with delegations reprinted in IRM 1.2, Section 2.

(8) **Delegated to**: Assistant Deputy Commissioners, *Division Commissioners*; Chiefs; and Directors*,* Submission Processing Field, Compliance Services Field, and Accounts Management Field.

(9) **Redelegation:** The *officials identified in paragraph 8 may redelegate* the authority provided in paragraph 7 as to matters under their jurisdiction and cases under their responsibility.

Delegation Order 193 (republished as Delegation Order 1-23, ECF No. 21-2) (emphasis added).

## 4.      Initial Interpretation of Delegation Order 193

Prior to *Living Word*, the IRS interpreted Delegation Order 193 to delegate authority to make the Section 7611 Determination to the DEOE.  *See generally Living Word, R&R* at * 6 ("Believing [Delegation Order 193] gave the authority of Regional Commissioners to 'Directors' in general, the IRS reinterpreted the definition of 'appropriate high-level Treasury official' to include the [DEOE].") (citing IRM 4.76.7.4 (June 1, 2004)).  This interpretation is reflected in IRM 4.76.7.4, which requires an Inquiry Notice include a "Statement of Administrative and Constitutional Rights." IRM 4.76.7.4 ("IRM 4.76 Statement of Rights").  This Statement reads, in part, as follows:  "The IRS may begin a church tax inquiry only if the *Director Exempt Organizations, Examinations* [DEOE] reasonably believes, on the basis of facts and circumstances recorded in writing, that an organization" meets one of the criteria for an Inquiry.  IRM 4.76.7-3 (June 1, 2004) (emphasis added).  While later paragraphs in this Statement and numerous other subsections of IRM 4.76.7 place responsibilities on the "Designated Official," none offer a

14

definition. *See, e.g., id.* ¶ (3) (stating additional notice signed by "Designated Official" is required to conduct an Examination); IRM 4.76.7.4.4(1) (requiring "Designated Official" sign "church tax inquiry letter"); IRM 4.76.7.5(2) (requiring "Designated Official" sign "notice of examination"). Absent identification of some other official, the language in the IRM 4.76 Statement of Rights suggests the DEOE is the "Designated Official" required to perform each of these tasks.

*Living Word* held the DEOE's level or rank was too low to satisfy Section 7611(h)(7)'s definition of "appropriate high-level Treasury official. *Living Word, R&R* at *13 (focusing on statutory use of terms "level" and "rank"); *Living Word, Order* at *4. The Government did not appeal that decision. Neither, however, did it change the IRM 4.76 Statement of Rights (identifying DEOE as official authorized to make the Section 7611 Determination) until October 2017, after the instant Petition was signed. *See infra* § I.A.5 (addressing January 2016 revisions to IRM 25.5.8 and October 2017 transmittal of IRM 4.75.39 (superseding IRM 4.76.7)).

### 5. IRS Position on Delegation after *Living Word*

**Proposed Regulation.** Soon after *Living Word*, the Treasury Department proposed a regulation that would have vested authority for the Section 7611 Determination in the DEO. *See* Amendments to the Regulations Regarding Questions and Answers Relating to Church Tax Inquiries and Examinations, 74 Fed. Reg. 39,003 (proposed Aug. 5, 2009). The proposed regulation was, however, opposed and has neither been adopted nor withdrawn. *See* Martin, 29 Akron Tax J. at 16-18 (noting that, following a public comment period and hearing on the proposed regulation, "the clear majority of comments submitted expressed concern over giving the [DEO] this responsibility").

**IRM 25.5.8.**  In January 2016, before the Determination as to BST was made, the IRS transmitted IRM 25.5.8 (Part 25-Special Topics; Chapter 5-Summons; Section-Use of Summons Special Applications).  This Section includes the following language:

Church Tax Inquiry

1.      Before a church tax inquiry can begin, certain reasonable belief and notice requirements defined in IRC § 7611 must be satisfied.  There must be a reasonable belief on the part of the *Designated Official* that the church: [satisfies one of three circumstances]

**Note:**

*The designated official is the Director, Exempt Organizations who acts in concurrence with the TE/GE Commissioner.*

IRM 25.5.8.3.2(1) (01-27-2016) (emphasis added).  A list of "**Material Changes**" at the start of the subchapter describes this note as having "defined the designated official[.]"  *Id.*

**IRM 4.75.39.**  The hybrid identification of the DEO "who acts in concurrence with the TE/GE Commissioner" was not incorporated into the IRM section governing Inquiries and Examinations until October 30, 2017 (after the instant Petition was filed).  On that date, the IRS transmitted IRM 4.75.39 (Part 4-Examining Process; Chapter 75-Exempt Organizations Examination Procedures; Section 39-Church Tax Inquiries and Examinations under IRC 7611).  This IRM Section supersedes IRM 4.76.7 (discussed *supra* Discussion § I.A.4).  It incorporates IRM 25.5.8.3.2's "state[ment] that the '[D]esignated [O]fficial' for purposes of the [sic] satisfying 'reasonable belief' and the notice requirement defined in IRC 7611 is the Director, Exempt Organizations [DEO] who acts in concurrence with the TE/GE Commissioner."  IRM 4.75.39.1.1(6).  The remainder of the section includes multiple references to the Designated Official, including requiring the Inquiry Notice and Examination Notice be signed by the "Designated Official."  *See* IRM 4.75.39.7.4(1) ("The Designated Official must sign the church

16

tax inquiry letter."); IRM 4.75.39.8(2) ("The Designated Official must sign the notice of examination.").

Thus, when the Section 7611 Determination at issue in this action was made and Notices were sent, the Initial Regulation still identified the Regional Commissioner as the lowest level official who could make the Section 7611 Determination and required this official "provide" the Inquiry Notice. In addition, the IRS had a long-pending proposed regulation that would vest authority to make the Section 7611 Determination in the DEO (acting alone), a long-standing IRM provision purporting to vest this authority in the DEOE (though that interpretation was rejected in *Living Word*), and a recently-adopted IRM provision purporting to vest authority in the DEO "who acts in concurrence with the TE/GE Commissioner."[11] The IRM provisions also required the "Designated Official" sign both the Inquiry Notice and Examination Notice.

**B.      IRS Position on Delegation in this Case**

**Pre-Petition Communications with BST.** The IRS's pre-litigation communications with BST indicated exclusive reliance on the DEO as the official responsible for making the Section 7611 Determination and taking other actions required to be taken by the "Designated Official." *See supra* Background § II.A (summarizing correspondence). For example, the DEO was the only official to sign the Inquiry Notice or Examination Notice. *Id.*; ECF No. 1-1 at 60-64; ECF No. 10-11. Nothing in the pre-Petition communications suggested *any* involvement by the TE/GE Commissioner. This was despite BST's repeated challenges to the DEO's authority to make the Section 7611 Determination. *Supra* Background § II.A (summarizing communications filed as

_____

[11]  The conflict between the two IRM provisions was resolved only after the Petition in this action was filed.

17

ECF Nos. 10-8 through 10-14). The IRS responded to these challenges either by arguing the DEO was the proper official or insisting on compliance without addressing the issue of the DEO's authority. *Id.* Most notably, in a letter dated August 4, 2016, the Mid-Atlantic Area Manager for Exempt Organizations Examinations responded to a letter from BST's CPA, as follows:

> In response to the Notice of Church Tax Inquiry Letter, your Power of Attorney, Donald E. Guinn, CPA, provided a letter which states, in part, that you will provide no further responses to the inquiry letter until it is clear who has authority to sign Notice of Church Tax Inquiry Letters. Mr. Guinn based this position on the court case *U.S, v. Living Word Christian Center.*

> In response to Mr. Guinn's letter, it is necessary to elaborate on the court case that Mr. Guinn references. The ruling in that case was that the [DEOE] was not an appropriate high-level Treasury official for the purpose of making the required reasonable belief determination that an examination of a church's records can occur. The presiding judge determined that an official four levels removed from the Commissioner was insufficient.

> In the instant case, the Notice of Church Tax Inquiry Letter issued to your organization was signed by the [DEO]. The [DEO] is a high-level Treasury official that is one level up from the [DEOE], and is three levels below the Commissioner of the IRS.

> As a point of reference, each case that involves a church, or a case where an organization asserts that they may be a church, is subject to many layers of review to ensure that section 7611 of the IRC is applied consistently and fairly. This process provides a sufficient review as required under section 7611 of the Code and allows for a fair and consistent determination of a reasonable belief to proceed with an inquiry.

ECF No. 10-9. While this letter refers to "many layers of review," it does not expressly claim participation by any official *above* the DEO and expressly argues the DEO serves at a sufficiently high level to satisfy Section 7611. No other written IRS communication expressly addresses these points.

**Litigation Position (Petition).** The Government first disclosed *any involvement* by the TE/GE Commissioner in its Petition. ECF No. 1 ¶¶ 28. 29. This document alleges the TE/GE

Commissioner "signed" the Approvals Cover Sheet and states "approval of the notice of church tax inquiry of BST by [the DEO], acting with the concurrence of the TE/GE Commissioner, satisfies the reasonable belief requirement of [Section 7611]." ECF No. 1 ¶¶ 28, 29. This statement, for the first time, suggests reliance on IRM 25.5.8's hybrid identification of the DEO "who acts in concurrence with the TE/GE Commissioner" as the "designated official," though the language in the Petition varies from that in the IRM. It may also imply, though it does not expressly claim, the TE/GE Commissioner "concurred" with the determination by the DEO.[12]

**Litigation Position (Reply).** Through its Reply, the Government advances a *primary* position the DEO had authority to make the Section 7611 Determination and an *alternative* position the TE/GE Commissioner had authority to do so. Both arguments focus on whether these officials have sufficient rank. The Government offers evidentiary support in the form of Declarations of both the DEO and TE/GE Commissioner. ECF No. 15-1, 15-2. Each avers she reviewed specific materials, made a Section 7611 Determination, and evidenced that determination by signing the Approvals Cover Sheet. Neither the Declarations nor the Reply memorandum characterize the actions as a concurrence or mention any IRM provision.[13]

Thus, while paragraph 29 of the Petition suggests possible reliance on the hybrid designation of the DEO "who acts with the concurrence of the TE/GE Commissioner[,]" the

---

[12] The Petition does not directly allege or raise an inference the TE/GE Commissioner made *her own* Section 7611 Determination. The attached supporting documents, likewise, reveal only that the TE/GE Commissioner signed the Approvals Cover Sheet.

[13] As noted above, IRM 4.75.39 (transmitted October 30, 2017) now incorporates the hybrid designation in IRM 25.5.8 and supersedes IRM 4.76.7 (which purports to vest authority in the DEOE).

Government does not advance this position in its Reply in support of the Petition.  Neither does it, in any memorandum, address the import of the concurrence requirement.

**Litigation Position (Supplemental Briefing).**  After BST's Sur-Reply and the court's own legal research revealed the relatively recent hybrid "Designated Official" language in IRM 25.5.8 and IRM 4.75.39 and arguably conflicting designation language in IRM 4.76.7 ("in effect" until superseded by IRM 4.75.39), the court directed the parties to file supplemental memoranda addressing the threshold question whether and how delegation of authority was made to the DEO, the TE/GE Commissioner, or both.  In its responsive memorandum, the Government argues authority was delegated to the TE/GE Commissioner by Delegation Order 193 and redelegated to the DEO through her job description and IRM description of the Exempt Organizations function. ECF No. 21.  The Government cites IRM 25.5.8.3.2 on the last page of its responsive brief, describing it as "an *additional delegation* of authority to the [DEO].'"  ECF No. 21 at 7 (emphasis added) (characterizing IRM 25.5.8.3.2 as "provid[ing] the [DEO] *acting with the concurrence of* the [TE/GE Commissioner]," has authority to make the Section 7611 Determination and sign the Examination Notice (emphasis added)).

Earlier in its memorandum, the Government appears to rely on IRM 25.5.8.3.2 as setting the required procedure by asserting "[t]he IRS followed procedures set out in the Internal Revenue Manual which provide that the [DEO], makes the reasonable-belief determination with the concurrence of the [TE/GE Commissioner].  *In accordance with these procedures, both officials made a reasonable-belief determination*."  ECF No. 21 at 2 (emphasis added).  This suggests that, at the time the BST Determination was made, the IRS understood the delegated authority to be set by or at least require compliance with IRM 25.5.8.3.2 and construed the concurrence language in that section to require that each listed official make her own Section 7611 Determination. The

DEO's and TE/GE Commissioner's Declarations indicate actions consistent with this interpretation, though neither refers to the IRM provision or any concurrence requirement.

## II.     Delegation to the TE/GE Commissioner

Whether the TE/GE Commissioner had authority to make the Section 7611 Determination as to BST raises two subordinate questions:  (1) whether a delegation (or attempted delegation) occurred; and (2) whether any such delegation is permissible under Section 7611(h)(7).  The court answers both questions in the affirmative.

### A.     Source of Delegation to TE/GE Commissioner

For reasons addressed below, the court finds Delegation Order 193 is reasonably interpreted to make two distinct delegations of authority to the TE/GE Commissioner (through ¶¶ (4)-(6) and (7)-(9)).  Both of these delegations include authority to make the Section 7611 Determination.[14]

**Breadth of Delegation Order 193.**  Delegation Order 193 is both extremely broad and, consequently, non-specific.  This might, at first blush, appear to run afoul of the IRS's own

_____

[14]  The Government disavows reliance on *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1934), or any other deference standard that might apply to the IRS interpretation of Section 7611.  *See* ECF No. 15 at 9 n.6.  The court does not, therefore, apply *Skidmore* in evaluating the Government's position.  Application of *Skidmore* would, in any event, be problematic given apparent inconsistencies between the IRS's pre-litigation and litigation positions and its failure to advance a litigation position that accounts for the hybrid role described in IRM 25.5.8.3.2, the IRS's most formal expression of its interpretation.  *See United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (under *Skidmore*, "[t]he fair measure of deference to an agency administering its own statute . . . var[ies] with circumstances, and courts have looked to the degree of care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position."); *Lovilla Coal Co. v. Harvey*, 109 F.3d 445, 42 (8th Cir. 1997) (rejecting mere-litigating position argument in reviewing agency's own rule); *Living Word, R&R* at **12, 13 (holding agency designation of DEOE failed to satisfy statutory requirements despite *Skidmore* deference *and consistency of interpretation*).

guidance on delegation of authority because the breadth and lack of specificity require, at the least, consultation of additional sources to determine which duties are delegated to which officials. *See* IRM 1.11.4.3(1) (October 10, 2008) (requiring delegations be in writing and *clearly express the intent of the delegating official*" (emphasis added)). It is, nonetheless, clear given the impetus for Delegation Order 193 (implementation of the IRS Reform Act) that it is intended to delegate essentially all authority held by officials listed in paragraphs (4) and (7) (including authority to make the Section 7611 Determination) to one or more officials listed in paragraphs (5) and (8). Moreover, while determining *which* official is the intended target of a specific delegation of authority is no easy task, it can presumably be accomplished by examining sources defining "the respective activities or functions administered" by the officials listed in paragraph (5) and "matters under [the] jurisdiction or cases under [the] responsibility of" officials listed in paragraph (8). Any statutory limitations on delegation such as those found in Section 7611 would be considered in this process. Consideration of statutory limitations is particularly appropriate as to delegations under paragraphs (7)-(9) as paragraph (7) allows for delegation "except where prohibited by law."

**Delegation of IRS Commissioner's Authority—Paragraphs (4)-(6).** Paragraph (4) delegates "functions the [IRS] Commissioner is authorized to perform." Delegation Order 193 ¶ (4) (quoted *supra* Discussion § I.A.3). In 1982, the Secretary of the Treasury delegated authority over all matters arising under the Internal Revenue Code to the IRS Commissioner. Treasury Order 150-10 (April 22, 1982) (filed as ECF No. 21-1). It is undisputed this delegation includes authority to make the Section 7611 Determination. Thus, authority to make the Section 7611 Determination is within the authority covered by paragraph (4) and delegated by paragraph (5).

The delegates listed in paragraph (5) include but are not limited to "Division Commissioners." It is undisputed the TE/GE Commissioner is a Division Commissioner. It is

22

also evident that audit or oversight of church tax matters and the steps necessary to institute an Inquiry and Examination "concern the respective activities or functions administered" by the TE/GE Commissioner. Thus, paragraphs (4) and (5) of Delegation Order 193 are reasonably interpreted to delegate authority to make the Section 7611 Determination to the TE/GE Commissioner (subject to any legal limitation that might be imposed by Section 7611(h)(7)).

**Delegation of Regional Commissioner's Authority—Paragraphs (7)-(9).** Paragraph (7) delegates authority to take actions previously delegated to four categories of official (including Regional Commissioners) by three sources (including Treasury Regulations) for matters under the jurisdiction or cases under the responsibility of the four categories of officials listed in paragraph (8). This delegation is subject to certain limitations including "where prohibited by law." *Id.* ¶ (7). The delegates in paragraph (8) include Division Commissioners and, consequently, include the TE/GE Commissioner.

Because Treasury Regulations delegated authority to make the Section 7611 Determination to Regional Commissioners, this authority is within the authority delegated by paragraph (7). *See supra* § I.A.2 (Initial Regulation). Because audit and examination of churches is a matter under the jurisdiction or a case under the responsibility of the TE/GE Commissioner, it is reasonable to conclude the TE/GE Commissioner is the official to whom authority to make the Section 7611 Determination was delegated by paragraph (8), subject to any legal prohibition that might be imposed by Section 7611(h)(7).

**B.      Effectiveness of Delegation to the TE/GE Commissioner**

As explained above, two subparts of Delegation Order 193 are reasonably interpreted to delegate authority to make the Section 7611 Determination to the TE/GE Commissioner. *Supra* Discussion § II.A. Such delegation is *effective* only if the TE/GE Commissioner satisfies Section

23

7611(h)(7)'s definition of an "appropriate high-level Treasury official" as "the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region." 26 U.S.C. § 7611(h)(7).

It is undisputed Section 7611(h)(7)'s reference to "a principal Internal Revenue officer for an internal revenue region" describes the now-abolished position of Regional Commissioner. Thus, whether delegation of authority to make the Section 7611 Determination to the TE/GE Commissioner is effective turns on whether the TE/GE Commissioner holds a rank equal to or higher than that of a former Regional Commissioner. *See generally* ECF No. 15 at 6 (Government Reply characterizing issue as "quite simply[,] . . . in the current organizational structure of the IRS, who holds a 'rank . . . no lower' than a regional commissioner held in the old structure").

**BST's Argument.** BST argues the TE/GE Commissioner does not hold a rank comparable to that of a Regional Commissioner for two reasons. First, according to BST, Regional Commissioners stood one step closer to the IRS Commissioner in the chain-of-authority than does the TE/GE Commissioner. ECF No. 10 at 20 (citing Owens' First Decl. ¶¶ 6, 17 ("Regional Commissioners were one rank below the IRS Commissioner and reported directly to the IRS Commissioner" while "[t]he TE/GE Commissioner is two steps removed from the Commissioner of the IRS, reporting to the Deputy Commissioner for Services and Enforcement")). Second, the positions themselves are not comparable because Regional Commissioners were responsible for all categories of taxpayer and all aspects of administration (within their geographic region), while the TE/GE Commissioner is responsible only for tax administration for specified categories of taxpayer. ECF No. 10 at 20-21 (citing Owens' First Decl. ¶ 17). BST argues the TE/GE

Commissioner's narrower responsibilities prevent her from having the broad view necessary to satisfy Section 7611(h)(7).[15]

**Government's Argument.**  The Government argues the focus should not be on counting steps but on the "role and responsibilities" of the officials "in light of the expanded and more complex mission of the IRS in [the] present day as opposed to 1984" when CAPA was adopted. ECF No. 15 at 7.  The Government's argument as to the role and responsibilities of the TE/GE Commissioner builds on its corresponding "primary" argument the DEO (an official one step below the TE/GE Commissioner) holds "a rank most similar to the regional commissioners in the pre-1998 structure."  The Government explains this position as follows:

> The appropriate criteria for [determining which official satisfies Section 7611(h)(7),] are the official's expertise in and scope of authority *over tax-exempt organizations*.  As described below, the [DEO], is the highest ranking Treasury official in the country *focused exclusively on exempt organizations* and occupies a position with responsibilities most similar to the former regional commissioners.

ECF No. 15 at 7, 8 (emphasis added); *see also id.* at 9 (arguing an analysis based on steps from the IRS Commissioner "is absurd and impractical because of the comprehensive organizational changes implemented pursuant to the 1998 law and the inherent complexity of managing a large organization.").[16]

_____

[15]  BST does not identify the official it believes is the lowest level official now satisfying Section 7611(h)(7).  Its arguments, however, point to the Deputy Commissioner for Services and Enforcement as the relevant official because this Deputy Commissioner is the first official with responsibility over the subject matter who is no more than one step removed from the IRS Commissioner.

[16]  These arguments are included in the Government's primary argument the DEO holds sufficiently high rank, which serves as a foundation for its alternative argument the TE/GE Commissioner holds sufficient rank.

Even if step-counting is accepted as the proper framework, the Government argues BST has not established Regional Commissioners were only one step removed from the IRS Commissioner in the chain-of-authority because the Declaration and organizational charts on which BST relies (1) do not address the IRS's organizational structure in 1984 when CAPA was adopted, and (2) are ambiguous as to the period that is covered (immediately prior to reorganization) because the relevant chart (ECF No. 10-16 at 10) includes two Deputy Commissioners inside the Commissioner box without explaining the impact of those Deputy Commissioners on the chain-of-authority. While the Government does not present evidence of the IRS's structure in 1984, it does present evidence from the 1998 legislative hearings on IRS restructuring that suggests there were, at least in practice, more steps between the Regional Commissioners and the IRS Commissioner than claimed by BST. ECF No. 15 at 10 (citing testimony from restructuring hearing that Regional Commissioners reported to the IRS Commissioner indirectly, through multiple layers of other officials)).[17]

Specifically as to the sufficiency of the TE/GE Commissioner's rank and responsibilities, the Government asserts the TE/GE Commissioner (1) "supervises a national division whose customers include churches and other tax-exempt organizations"; (2) oversees "approximately 1,500 employees"; (3) supervises the DEO; and (4) reports to the IRS Commissioner through the Deputy Commissioner for Services and Enforcement. ECF No. 15 at 13.

---

[17] One witness testified Regional Commissioners reported "to the chief of staff to a deputy assistant commissioner. . . who reports to the deputy assistant commissioner who reports to the assistant commissioner who reports to the chief operating officer who reports to the deputy commissioner of the IRS who reports to the commissioner[.]" *IRS Restructuring: Hearings on H.R. 2676 (S. Hrg. 105-529 ) Before the S. Comm. on Finance*, 105th Cong. 296, 298 (Feb. 25, 1998) (prepared statement of Paul C. Light, Dir., Pub. Policy Program, The Pew Charitable Trusts) (filed as ECF No. 15-4 at 305).

The Government attaches the Declaration of the TE/GE Commissioner, who describes her areas of responsibility as follows:

> 2.      TE/GE's customers include small local community organizations, major universities, large pension funds, small business retirement plans, local and state governments, participants in complex tax-exempt bond transactions and Indian tribal governments and tribal associations.  The customers are divided into three segments:  Employee Plans, Exempt Organizations, and Government Entities and Shared Services.  TE/GE has nationwide authority.

> 3.      As TE/GE Commissioner, I have responsibility for all matters relating to the development and execution of the TE/GE division's long-term strategy including data-driven decision-making, risk management, employee engagement, and knowledge management.  This includes activities such as rulings and agreements, examinations, education and communication, and coordination with other IRS divisions and oversight entities.

ECF No. 15-2 ¶¶ 2, 3.

The Government also compares the current structure ("divided topically among the several division commissioners") and former structure ("divided geographically among the several regional commissioners").  *Id.*  It notes the Magistrate Judge in *Living Word* described the TE/GE Commissioner as the "logical counterpart" to a Regional Commissioner.  *Id.* (concluding "[w]ithout a doubt, the Commissioner, TE/GE, is sufficiently high-ranking to approve a church tax inquiry").

**BST Sur-Reply.**  Through its Sur-Reply, BST submits a second Declaration by Owens (ECF No. 19-1), which attaches an organizational chart reflecting the IRS structure in 1984.  ECF No. 19-1 at 5.  This chart indicates two relevant lines of authority.

The line that includes Regional Commissioners runs from a box containing the IRS Commissioner and Deputy Commissioner directly to Regional Commissioners (of which there were seven).  Below the Regional Commissioners are District Directors (of which there were 63) and Service Centers (of which there were 10).  Below the District Directors are six divisions, each

27

described by its function.[18]  Two of the divisions are titled "Examination" and "Employee Plans and Exempt Organizations."  The Regional Commissioners and their subordinates are described as "Field Offices."

    **Discussion.**  For reasons explained below, the court concludes the positions of TE/GE Commissioner and former Regional Commissioner are comparable (before and after IRS reorganization) in terms of *rank*.  Thus, the TE/GE Commissioner holds a rank comparable to that of the official described in Section 7611(h)(7) as the lowest-ranking official to whom authority to make the Section 7611 Determination could be delegated.  While the responsibilities of the TE/GE Commissioner are not the same as those of a Regional Commissioner, the scope of the TE/GE Commissioner's responsibilities are sufficiently broad to serve the purpose intended by Section 7611(h)(7)'s definition of appropriate high-level Treasury official.

    **Comparability between four geographic regions and four taxpayer-type divisions.**
The most persuasive evidence of comparable rank is found in the level of responsibility of the two positions based on the structure of the IRS before and after reorganization.  As noted in *Living Word, R&R*,  "[j]ust like the four regions in the old structure, each of the four taxpayer-type divisions . . . has its own Commissioner who reports up the chain to the Deputy Commissioner, Services and Enforcement, who in turn reports to the Commissioner of Internal Revenue."  *Living Word, R&R* at *11.  (ultimately characterizing the TE/GE Commissioner, who was two levels above the DEOE, as "the logical counterpart to the Regional Commissioner"); *see also Living Word, Order* at * 3 (explaining Magistrate Judge "did not state that the [TE/GE Commissioner]

---

[18]  Numbers following the titles suggest there were then seven Regional Commissioners and sixty-three District Directors.

had same broad array of duties as the Regional Commissioner" but did find the responsibilities of the Regional Commissioners were "more closely aligned" with those of the TE/GE Commissioner than those of the DEOE).

This court agrees the change in structure from four geographic regions to four taxpayer-type divisions suggests the pre-reorganization Regional Commissioners and post-reorganization Division Commissioners (including the TE/GE Commissioner) stand at a comparable level and hold comparable rank. To the extent the change from seven Regional Commissioners in 1984 (when CAPA was enacted) to four Regional Commissioners in 1998 (when the IRS Reform Act was enacted) has any impact on the analysis, it supports a finding the TE/GE Commissioner's rank is *at least* as high as that of a Regional Commissioner.[19]

**Chain-of-Authority (steps from Commissioner).** It is undisputed the TE/GE Commissioner reports to the Deputy Commissioner for Services and Enforcement who reports to the IRS Commissioner. *See* ECF No. 10-16 ¶ 17 (Owens' First Decl.); ECF No. 15-2 ¶ 5 (TE/GE Commissioner's Decl.). This chain-of-authority is consistent with organizational charts submitted by BST. *See* ECF No. 10-16 at 17 (October 1, 2000 chart reflecting line from TE/GE Division to box containing Commissioner and Deputy Commissioner); ECF No. 10-16 at 19 (2015 chart reflecting separate boxes for Commissioner and Deputy Commissioners and demonstrating the TE/GE Commissioner reported directly to a Deputy Commissioner).

---

[19] BST proffers uncontroverted evidence that there were seven regions and, consequently, seven Regional Commissioners when CAPA was enacted. *See*, *e.g.*, Owens' First Decl. ¶ 4 (ECF No. 10-16).

The evidence of the chain-of-authority for Regional Commissioners is less clear. Relying on Owens' First Declaration, BST asserts Regional Commissioners reported "directly" to the Commissioner. Owens' First Decl. ¶ 6 ("Regional Commissioners were one rank below the IRS Commissioner and reported directly to the Commissioner."). Owens' characterization of the reporting structure appears to be based on his interpretation of an attached organizational chart from 1998, which reflects a direct line from a box containing the IRS Commissioner and two Deputy Commissioners to the Regional Commissioners. ECF No 10-16 at 10.[20] An organizational chart from 1984 attached to Owens' Second Declaration is similar, reflecting a line from a box containing the Commissioner and a single Deputy Commissioner to Regional Commissioners. ECF No. 19-1 at 5. Owens avers to the same "direct" reporting structure in 1984.[21]

---

[20] Owens' First Declaration includes a preliminary statement that he has personal knowledge of the matters asserted gained through his many years working for the IRS. However, many of his statements of "fact" appear to be based primarily on his review of statutes, regulations, manuals, charts, case law, and other materials. *See, e.g.*, ECF No. 10-16 ¶ 3 (explaining legislative purpose behind Section 7611(h)(7)); *id.* ¶¶ 11, 12 (characterizing ruling in *Living Word* as "rebuff[ing]" IRS's designation of DEOE as the Designated Official and addressing subsequent proposed regulation); *id.* ¶¶ 4, 13 (describing organizational charts). While Owens' interpretation of these materials may be informed by his many years of experience with the IRS, it is not clear that the testimony he offers is based on *personal knowledge*. This is particularly true as to his critical assertion Regional Commissioners reported "directly" to the IRS Commissioner given Owens' apparent position in the organizational scheme (lower down and on a separate line of authority than Regional Commissioners).

[21] Owens' Second Declaration discloses the source of the attached 1984 organizational chart. ECF No. 19-1 ¶ 4. In the following paragraph, he asserts Regional Commissioners were "one rank below the IRS Commissioner and reported directly to the IRS Commissioner." ECF No. 19-1 ¶ 5. As in his First Declaration, Owens asserts he has personal knowledge of the IRS structure in 1984 due to his "employment in the Exempt Organizations Division." *Id.* ¶ 3. It is, nonetheless, unclear whether he is relying on some independent personal knowledge (of the reporting scheme for an official higher up and in a different line) or the attached organizational chart in describing the Regional Commissioners' chain-of-authority.

The organizational charts attached to Owens' Declarations do not reveal the reporting structure within the box containing the Commissioner and Deputy Commissioner(s) (one in 1984, two in 1998). The Government questions the accuracy of BST's (and Owens') characterization of the Regional Commissioners' chain-of-authority, citing evidence that, in practice (at least by 1998), Regional Commissioners reported to the IRS Commissioner through multiple layers including deputy commissioners and assistant deputy commissioners. *See* ECF No. 15 at 10 (citing testimony from IRS restructuring hearing).[22]

On this record the court cannot determine whether the Regional Commissioners, in fact, reported directly to the IRS Commissioner, or through one or more intermediate officials. More critically, the court cannot determine whether the legislative decision (in 1984) to make Regional Commissioners the lowest level official to whom the Section 7611 Determination could be delegated was dependent on such a direct reporting relationship.

It appears at least equally likely the legislative decision was based on the reporting structure reflected on the organizational chart in effect in 1984. That chart places Regional Commissioners (like the TE/GE Commissioner today) on the first step outside the box containing the IRS Commissioner and Deputy Commissioner(s). This analysis, which is all that is possible on the present record, suggests the TE/GE Commissioner's level or rank is comparable to that of a

---

[22] This testimony was offered by the Director of the Public Policy Program for the Pew Charitable Trust. ECF No. 15 at 10 (citing 105th Cong. 296, 298). Thus, like some aspects of Owens' Declarations, it would not appear to be based on first-hand knowledge.

Regional Commissioner and that both held a "rank" immediately below that of a Deputy Commissioner.[23]

The rank of the TE/GE Commissioner and Regional Commissioners relative to that of a Deputy Commissioner is of particular significance because BST's argument on rank suggests the lowest level official who may now make the Section 7611 Determination is the Deputy Commissioner of Services and Enforcement. BST's argument proves too much because it would effectively replace the statutory clause "principal Internal Revenue officer for an internal revenue region," a clause the parties agree refers to the former Regional Commissioners, with "Deputy Commissioner." Had Congress intended to make the Deputy Commissioner the lowest official to whom authority to make the Section 7611 Determination could be delegated, it could easily have done so as such a position existed in 1984. That Congress did not do so weighs against any argument that would produce such a result.[24]

_____

[23] It may also be of some significance, though hardly determinative, that the term "Commissioner" is used for both Regional Commissioners and the TE/GE Commissioner. The various organizational charts submitted to the court reveal use of the term "Commissioner" only for the IRS Commissioner, Regional Commissioners, the TE/GE Commissioner and her three equal-ranked division heads, or with a prefix denoting a lower rank such as Deputy, Associate, or Assistant.

[24] The 1984 organizational chart reflects a single Deputy Commissioner within the same box as the IRS Commissioner. ECF No. 19-1 at 5. Multiple lines run from this box, including three lines to "National Office[s]" and one line to the seven Regional Commissioners and their subordinates, described collectively as "Field Offices." While the relative rank of the various officials in the different ("National" vs "Field") lines may be debatable, all (including Regional Commissioners) would presumably fall below the rank of the single Deputy Commissioner. The structure was essentially the same in 1998, though there were then two Deputy Commissioners and four Regional Commissioners. ECF No. 10-16 at 10. Similarly, there are now two Deputy Commissioners and four subordinate "Commissioners" of specific divisions including the TE/GE Commissioner. ECF No. 10-16 at 17, 19.

**Distance From Conduct of Examinations.**  The court reaches a similar conclusion if it counts steps up from the examination function rather than down from the IRS Commissioner.  The 1984 organizational chart attached to Owens' Second Declaration reflects two steps between the examination function and Regional Commissioners.  Specifically, Examinations appears below District Directors who appear below Regional Commissioners.  Though the structure differed, there were also two steps between the examination function and Regional Commissioners immediately prior to reorganization.[25]  Currently, the DEOE, who is responsible for Examinations, reports to the DEO, who reports to the TE/GE Commissioner.  Thus, the TE/GE Commissioner, like Regional Commissioners in 1984 (and 1998), is two steps removed from the examination process.

**Nature of Duties.**  As BST argues and *Living Word* acknowledged, the requirement an "appropriate high-level Treasury official" make the Section 7611 Determination was intended to ensure the Determination is made by an official with sufficiently broad perspective to balance the interests of proper enforcement of tax laws against the special First Amendment concerns applicable to churches.  *See generally Living Word, R&R* at *11 ("The broad responsibilities and experience of an official with such a high-profile position [as required by Section 7611(h)(7)] would make it likely that she has a heightened political and policy sensitivity for balancing the need for vigorous enforcement of our tax laws and the avoidance of excessive government intrusion into a church's exercise of religious freedom."); *see also id.* at *12 (finding delegation

---

[25]  The 1998 organizational chart submitted with Owens' First Declaration reflects two functions: (1) Examinations; and (2) Employee Plans and Exempt Organizations.  Both appear below an Assistant Regional Commissioner (Examinations), who reported to the Regional Commissioner.

of watchdog responsibilities intended to "halt over-zealous examination" to the official responsible for conducting those examinations, the DEOE, did not satisfy statutory purpose).

**Scope of Responsibilities.**  Because of the change in focus from geographic region to subject matter responsibility, there is no perfect comparison between the duties of Regional Commissioners and the TE/GE Commissioner.  Most critically, as BST argues, Regional Commissioners were responsible for administration of the tax laws as to all categories of taxpayer within their region, but only within their region.  In contrast, the TE/GE Commissioner is responsible only for three categories of taxpayer, Employee Plans, Exempt Organizations, and Government Entities and Shared Services, but that responsibility is nationwide.  Further, while the precise division of responsibility is unclear, it appears Regional Commissioners' responsibilities for taxpayers within their regions was limited given the division between "field" and "national" offices in the pre-reorganization structure.  *See* ECF No. 19-1 at 5 (1984 organizational chart with one "Field Offices" line leading to Regional Commissioners and three "National Office" lines headed by Associate Commissioners.[26]  In contrast, the TE/GE Commissioner's responsibilities

---

[26]  The three "National Office" lines are headed by Associate Commissioners of (1) Operations, (2) Policy and Management, and (3) Data Processing.  Below the Associate Commissioner (Operations) are heads of multiple taxpayer-type offices including the Assistant Commissioner (Employee Plans and Exempt Organizations), under whom there are three divisions, including the Exempt Organizations Technical Division.  The Exempt Organizations Technical Division was later renamed the Exempt Organizations Division and is the office in which Owens served.  Owens' Second Decl. ¶ 2; Owens' First Decl. ¶ 1.  Owens explains he was previously employed by the "Exempt Organizations Division, formerly known as the Exempt Organizations Technical Division, from 1975 to 2000" and served as Director of this division from 1990 to 2000.  Owens' Second Decl. ¶ 2.  Thus, Owens' position was in the "National Office" line where he served in a position three steps removed from the box containing the Commissioner and Deputy Commissioner.  The Regional Commissioners were in the separate "Field Office" line and only one step removed from the box containing the Commissioner and Deputy Commissioner.

for taxpayers under her authority appear to be complete, encompassing both functions previously assigned to "Field" and "National" offices. *See* TE/GE Decl. ¶ 3 (explaining she is responsible for "all matters relating to the development and execution of the TE/GE Division's long-term strategy" including "rulings and agreements, examinations, education and communication, and coordination with other IRS divisions and oversight entities"). In sum, the positions of former Regional Commissioner and current TE/GE Commissioner are each broader in some respects than the other, though both clearly have broad responsibilities.

**Conclusion as to Delegation to TE/GE Commissioner.** Based on the language of the statute, the court finds the TE/GE Commissioner's "level" or "rank" the most significant consideration. Whether viewed from the perspective of closeness to the IRS Commissioner or removal from the examination function, the TE/GE Commissioner's rank is comparable to that of a former Regional Commissioner.

The only position suggested by BST as an alternative "lowest" official to whom authority to make the Section 7611 Determination might be delegated is a Deputy Commissioner. The IRS's organizational structure prior to reorganization (both as reflected in the 1984 and 1998 organization charts) placed Deputy Commissioners above Regional Commissioners. This supports finding the TE/GE Commissioner's rank to be comparable to that of Regional Commissioner because both appear on the organizational charts immediately outside the box containing the IRS Commissioner and Deputy Commissioners. Finally, while reorganization of the IRS makes it difficult to compare the responsibilities of Regional Commissioner and TE/GE Commissioner, the court finds the TE/GE Commissioner's scope of responsibilities is sufficiently broad to serve the legislative purpose behind Section 7611(h)(7)'s minimum-rank requirement.

The court, therefore, finds the TE/GE Commissioner holds a sufficiently high rank to satisfy Section 7611(h)(7)'s definition of appropriate high-level Treasury official. In light of this determination and the conclusion Delegation Order 193 is reasonably interpreted to delegate authority for the Section 7611 Determination to the TE/GE Commissioner, the court finds the TE/GE Commissioner is an official to whom authority to make the Section 7611 Determination may be and has been delegated.

## III.    Redelegation to the DEO

The Government maintains authority to make the Section 7611 Determination was redelegated by the TE/GE Commissioner to the DEO. For reasons explained below, the court finds (1) the only evidence of "delegation" is the hybrid identification of a Designated Official in IRM 25.5.8.3.2; and (2) to the extent intended as a delegation of authority, IRM 25.5.8.3.2 is ineffective because the DEO lacks sufficient rank to satisfy Section 7611(h)(7).

### A.    Source of Delegation

The Government asserts Delegation Order 193 ¶¶ (7)-(9) allow redelegation and the TE/GE Commissioner relied on those paragraphs to redelegate authority to make the Section 7611 Determination to the DEO.[27] The Government identifies the following as demonstrating redelegation: (1) the IRM's description of the Exempt Organizations functions; (2) the DEO's job description; and (3) the IRM's identification of the DEO "who acts in concurrence with the

_____

[27] The Government is correct that these paragraphs of Delegation Order 193 allow redelegation. This is, however, subject to the limitation "except where prohibited by law." Thus, whether redelegation is allowed by Delegation Order 193 turns on the same analysis as whether any delegation is effective (addressed *infra* Discussion § III.B).

TE/GE Commissioner" as the "[D]esignated [O]fficial."[28]  *See* ECF No. 21 at 6, 7 (citing IRM

1.1.23.5(3) (describing Exempt Organizations function), ECF No. 21-3 (job description), and IRM

25.5.8.3.2).  The Government relies primarily on the first two sources and characterizes the IRM's

identification of a hybrid Designated Official as "an *additional* delegation of authority to the

[DEO]."  ECF No. 21 at 7 (emphasis added).

　　　The first two sources contain only general references to the DEO's duties or functions over

which she has responsibility.  The Government points to no language within these sources specific

to the Section 7611 Determination.  Neither does the Government provide any context for the

creation of the DEO's job description or IRM's description of Exempt Organizations functions

that would suggest an intent to include authority to make the Section 7611 Determination within

the DEO's duties.[29]  Thus, the first two sources on which the Government relies do not support a

finding of redelegation to the DEO.[30]

---

[28]  Contrary to its position in and prior to *Living Word,* where it interpreted Delegation Order 193 to delegate the relevant authority to "Directors" generally (including the DEOE), the Government does not argue Delegation Order 193 directly delegates authority to make the Section 7611 Determination to the DEO or any other "director."  The court need not, therefore, determine whether the DEO falls within the set of Directors listed in paragraph (8) ("Directors, Submission Processing Field, Compliance Services Field, and Accounts Management Field").

[29]  In contrast, as explained above, circumstances surrounding creation of Delegation Order 193 indicate it was intended to delegate all responsibility held by officials under the old organizational structure to officials under the new organizational structure including, specifically, duties held by the IRS Commissioner (Delegation Order ¶ (4)) and duties previously delegated to Regional Commissioners by Treasury Regulation (*id.* ¶ (7)).

[30]  IRM provisions on delegation *mandate* delegation by order when litigation is reasonably anticipated.  IRM 1.11.4.3(2) (providing "development of a delegation order is preferred for the purpose of tracking and is **mandatory** when litigation over the activity reasonably can be expected" (emphasis in original)).  Following *Living Word* and subsequent opposition to a proposed regulation that would have vested authority in the DEO, the IRS would reasonably have

The third source (IRM 25.5.8.3.2), in contrast, specifically refers to the Section 7611 Determination.[31] This IRM provision explains the Section 7611 Determination must be made by "the Designated Official" and, in a "Note," states "[t]he [D]esignated [O]fficial is the [DEO] who acts in concurrence with the TE/GE Commissioner." IRM 25.5.8.3.2(1). While the precise meaning of this hybrid designation is debatable, it clearly does not purport to authorize the DEO to make the Section 7611 Determination independently of the TE/GE Commissioner.[32] As this is both the most recent and most specific indication of the IRS's intent to as which officials may make the Section 7611 Determination, it controls over any general intent that might be gleaned from the two sources discussed above (DEO job description and IRM list of Exempt Organization functions).

IRM 25.5.8.3.2's identification of two officials, one acting "in concurrence with" the other, as the "Designated Official" is problematic due to its ambiguity. If it requires a de novo determination by the TE/GE Commissioner, any determination by the DEO is an *added requirement* rather than a delegation of authority. If it requires less than a de novo determination by the TE/GE Commissioner, the validity of the Determination turns on whether the DEO satisfies Section 7611(h)(7). For reasons explained below, the court concludes the DEO lacks sufficient

_____

expected litigation over any delegation of authority to make the Section 7611 Determination to the DEO.

[31] This language was recently incorporated into IRM 4.75.39, which supersedes IRM 4.76.7 (identifying DEOE as Designated Official).

[32] The Government's "primary position," as explained in its Reply brief, appears to argue there has been a complete delegation of authority to the DEO. ECF No. 15 at 6-7, 11-13.

rank to satisfy Section 7611(h)(7).  Thus, to the extent IRM 25.5.8.3.2 may be read as a delegation of authority (as opposed to an additional requirement), it is ineffective.

**B.      Effectiveness of Redelegation to the DEO**

**DEO "Rank."**  In Discussion § II.B. above, the court finds the TE/GE Commissioner satisfies the Section 7611(h)(7) requirement because her rank under the current IRS structure is comparable  to that of a Regional Commissioner under the former IRS structure.  While perhaps not dispositive, the analysis as to the TE/GE Commissioner's rank largely predicts the outcome as to the DEO.  This is because the DEO holds a rank one step below the TE/GE Commissioner (to whom the DEO reports).  *See* DEO Decl. ¶ 5.  Further, unlike the TE/GE Commissioner and Regional Commissioners, who appear immediately "outside the box" containing the IRS Commissioner and Deputy Commissioners), the DEO is one step further removed.  This suggests the DEO holds a rank below that of former Regional Commissioners.

**DEO Responsibilities.**  The DEO has "nationwide responsibility for all matters relating to [o]rganizations exempt from income tax under 26 U.S.C. § 501, including charities, private foundations and other types of exempt organizations" as well as "[p]olitical organizations described in 26 U.S.C § 527."  ECF No. 15-1 ¶ 3 (DEO Decl.).  The DEO supervises approximately 700 employees "organized into three offices, EO Examinations, EO Rulings & Agreements, and the EO Program Management Office."  *Id.* ¶ 4.  Thus, the DEO has nationwide responsibility but over a relatively narrow category of taxpayers.  Contrary to the Government's arguments, the DEO's exclusive focus on exempt (and political) organizations weighs against, rather than in favor, of finding her position satisfies Section 7611(h)(7), because it deprives her of the broad perspective of former Regional Commissioners.  *See* ECF No. 15 at 8 (arguing the proper focus is "the official's expertise in and scope of authority over tax-exempt organizations" and asserting the DEO

satisfies the relevant requirements because she "is the highest-ranking Treasury official in the country *focused exclusively on exempt organizations*" (emphasis added)).

This conclusion is consistent with the analysis in *Living Word, R&R*, which noted assigning responsibility to "halt over-zealous examination of churches" to an official closely connected to the office that conducts the examinations would not have the intended effect. While the DEO is one step above the DEOE, her connection is still too close to the examination process and her areas of responsibility too narrowly focused to serve the purpose of ensuring review by an official with a broad perspective and at some remove from the examination process.[33]

That the IRS was unable to gain approval of a regulation that would have vested authority to make the Section 7611 Determination in the DEO also weighs against finding the DEO satisfies Section 7611(h)(7). As explained in Martin, 29 Akron Tax J. at 16-18, "the clear majority of comments" relating to this proposed regulation "expressed concern over giving the [DEO] this responsibility."[34]

_____

[33] The DEO is at the same remove from the examination function as were District Directors (who reported to Regional Commissioners) under the structure reflected on the 1984 organization chart. *See* ECF No. 19-1 at 5 (attached to Owens' Second Decl.). The DEO's responsibilities are also similar to responsibilities of subordinates of Regional Commissioners under the structure immediately before reorganization of the IRS. *See* ECF No. 10-16 at 12 (indicating both the Examination Function and the Employee Plans and Exempt Organizations Function fell one step below Assistant Regional Commissioners (Examinations), who fell one step below Regional Commissioners).

[34] This regulation was proposed soon after *Living Word* was decided and has neither been withdrawn nor approved in its nearly decade-long pendency.

In sum, there is, at most, evidence of an intent to delegate shared authority for the Section 7611 Determination to the DEO and TE/GE Commissioner.  To the extent any delegation (whole or partial) is intended, it fails because the DEO lacks sufficient rank to satisfy Section 7611(h)(7).

**IV.      Procedural Defects Preclude Enforcement of Summons**

For reasons explained above, the TE/GE Commissioner has authority to make the Section 7611 Determination but the DEO does not.  Because the Government has made a prima facie showing the TE/GE Commissioner made the Determination, it has made the necessary showing this statutory requirement was satisfied.  *See Powell*, 379 U.S. at 57-58 (requiring Government make prima facie showing of four factors including "the administrative steps required by the Internal Revenue Code have been followed").

This does not end the inquiry because Section 7611 also imposes notice requirements.  26 U.S.C.  §§  7611(a)(1)(B),  (a)(3),  a(2).    Section  7611(a)(3)  addresses  the  Inquiry  Notice requirements, stating they "are met with respect to any church tax inquiry if, before beginning such inquiry, the Secretary provides written notice to the church of the beginning of such inquiry" and includes  specified  information.    Similarly,  Section  7611(b)(2)  states  the  Examination  Notice requirements are met if "the Secretary provides the notice" described in that section.  Neither Section expressly states the Secretary (or delegate satisfying Section 7611(h)(7)) must "sign" the Notices, though this is a reasonable interpretation of the statutory language and one the IRS appears to have applied through its IRM provisions requiring the "Designated Official" (the official with

authority to make the Section 7611 Determination) sign the Inquiry Notice and Examination Notice.[35]

In this case, the TE/GE Commissioner did not sign the Inquiry Notice and the IRS did not otherwise disclose her Determination to BST at any point between when the Inquiry Notice was signed (June 15, 2016) and when the Government filed its Reply in support of the Petition (November 23, 2017). The Petition (filed September 8, 2017) only hinted at this possibility by disclosing the TE/GE Commissioner signed the Approvals Cover Sheet and stating "approval of the [Inquiry Notice] by [the DEO], acting with the concurrence of the TE/GE Commissioner" satisfies Section 7611. ECF No. 1 ¶¶ 28, 29.[36]

Not unreasonably, given the information available to it, BST challenged the DEO's authority to make the Section 7611 Determination and sign the Inquiry Notice and made related challenges to the Examination Notice and Summons.[37] These challenges provided the IRS

---

[35] Like the statute, the Initial Regulation requires the Regional Commissioner "provide" the Inquiry Notice. It does not expressly address signing. IRM provisions in effect when the Inquiry Notice issued required it be signed by the official who made the Section 7611 Determination. IRM 4.76.7.4.4(1). A similar provision required the Examination Notice be signed by the "[D]esignated [O]fficial." IRM 4.76.7.5(2). Recently adopted IRM 25.5.8.3.2, identifies the DEO "who acts in concurrence with the TE/GE Commissioner" as the Designated Official (arguably requiring both officials sign).

[36] The supporting attachments, likewise, reveal only that the TE/GE Commissioner, like the DEO and five other officials, signed the Approvals Cover Sheet. Nothing in this document or any other attachment reveals the TE/GE Commissioner made her own Section 7611 Determination.

[37] The difficulties with the notice are further complicated by IRM 4.76.7-3, which was not superseded until October 30, 2017, and continued to identify the *DEOE* as the Designated Official. *Compare* IRM 4.76.7-3 (Statement of Rights), *with* IRM 4.75.39 (October 30, 2017) (superseding IRM 4.76.7). While *Living Word* held the DEOE lacked sufficient rank to make the Section 7611 Determination, the continued designation of this official in IRM 4.76.7-3 created a conflict with identification (in IRM 25.5.8.3.2) of the DEO "who acts in concurrence with the TE/GE

42

multiple opportunities to disclose the TE/GE Commissioner's Determination. Rather than doing so, the IRS argued the DEO was authorized to make the Section 7611 Determination and sign the Inquiry Notice in one letter (ECF No. 10-9), implicitly took the same position by having the DEO sign the Examination Notice (ECF No. 10-11), and insisted on compliance through other communications without addressing BST's repeatedly-raised challenge to the DEO's authority to initiate the Inquiry or approve the Examination (ECF Nos.10-12 through 10-14).

The IRS's failure to disclose the TE/GE Commissioner's Section 7611 Determination, whether through the original Notices or by clarifying communication, was not harmless. This is because BST declined (or lost) the opportunity to address the IRS's concerns by less formal means while it (correctly) maintained the DEO lacked authority to institute an Inquiry or Examination.[38] These less formal means of resolution comprise part of the protections afforded churches under CAPA and might have limited or eliminated the need for continuation of the Inquiry, an Examination, or issuance of the Summons. Thus, BST was prejudiced by the IRS's failure to disclose the TE/GE Commissioner's Determination, whether through the Notices themselves or through subsequent clarification.

---

Commissioner" as the Designated Official. At the least, these conflicting provisions raised legitimate concerns that the IRS should have addressed and could have resolved by disclosing the TE/GE Commissioner's Determination.

[38] The Government asserts BST never requested a pre-Examination conference. This is not entirely correct. While BST did not expressly seek a conference, its legal representatives repeatedly communicated BST's willingness to participate in a conference if it could do so without waiving its objection to the legitimacy of the Examination. *See*, *e.g.*, ECF No. 10-13 at 15, 20.

Under these circumstances, the court finds "there has not been substantial compliance with . . . the notice requirements of [Section 7611] (a) or (b)." *See* 28 U.S.C. § 7611(e)(1). The sole remedy for this failure (and any related "conference" failure)[39] is to stay the "proceeding to compel compliance with any summons . . . until the court finds that all practicable steps to correct the noncompliance have been taken." 28 U.S.C. § 7611(e)(1) (establishing remedy) & (2) (making remedy exclusive). This proceeding is, therefore, stayed until the IRS cures the deficiency by sending a corrected or amended Inquiry Notice, signed by or disclosing the Determination by the TE/GE Commissioner and affording BST all rights it would have had at the time the original Inquiry Notice was provided.

To ensure this matter does not remain open for an undue period of time on the docket, the Government is directed to inform the court promptly if the matter is concluded, and, if not sooner concluded, provide a status report within 180 days of entry of this order.

## CONCLUSION

The Petition is, therefore, stayed. The court does not address BST's other concerns because, at this stage, it is uncertain whether the matter will ever reach the Examination stage, much less what information the IRS may seek in any subsequent Examination.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
March 13, 2018

---

[39] While BST was provided notice of its right to a conference, the notice deficiency also contributed to loss of its right to a conference. *See generally* 28 U.S.C. § 7611(e)(1)(B).